UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**,

v.                                          Case No. **8:25-cr-356-VMC-AAS**

**SAMANTHA ANNE FREEMAN**,

Defendant.

_____/

## SENTENCING MEMORANDUM WITH OBJECTIONS TO THE FINAL PRESENTENCE REPORT AND REQUEST FOR VARIANCE

COMES NOW the Defendant, **Samantha Anne Freeman**, by and through undersigned counsel, respectfully submits this Sentencing Memorandum and requests that the Court impose the lowest sentence sufficient, but not greater than necessary, to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a). In addition, Ms. Freeman objects to the Final PSR's guideline calculation and submits that Ms. Freeman scores between **51-63 months in the bureau of prisons** without a variance.

Ms. Freeman has accepted responsibility by pleading guilty to Counts One through Five without a written plea agreement. The record also presents substantial mitigation bearing on both the advisory guideline analysis and the Court's independent obligation to impose a sentence that is sufficient, but not greater than necessary. Those considerations include her

1

comparatively limited role in the offense conduct, the addiction-driven nature of her conduct, her serious medical history, her longstanding work history, her role as the sole long-term provider for her daughter, the hardship her incarceration imposes on her family, and the strong community support reflected in multiple character letters submitted to the Court.

For the reasons set forth below, Ms. Freeman respectfully requests a downward adjustment and/or variance resulting in a sentence at the statutory minimum, or such lesser sentence as is lawfully available if the Court finds safety-valve relief or other applicable mitigation.

## I. Procedural Background

On July 16, 2025, a grand jury returned an indictment charging Ms. Freeman and a codefendant, **Jimmy Louis Harris, Jr.**, with conspiracy and substantive methamphetamine offenses arising from conduct between July and August 2024. Ms. Freeman later pleaded guilty to Counts One through Five of the Indictment without a written plea agreement, and her sentencing is set for April 16, 2026, at 3:00 p.m.

According to the Presentence Investigation Report, the probation office calculated a total offense level of 32 and criminal history category II, yielding an advisory range of 135 to 168 months. The defense has filed

objections challenging, among other things, the absence of a mitigating role reduction, the denial of acceptance of responsibility, the characterization of Ms. Freeman as acting for profit in an independent supplier role, and the failure to apply safety-valve relief. In the event the court applies the safety valve provision and minor role inclusive of the 3 levels for acceptance of responsibility Ms. Freeman would score **Offense level 23, Criminal History Category II with a range of 51-63 months Bureau of Prisons**.

## II. Governing Legal Principles

After United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory. The Court must begin by correctly calculating the advisory guideline range and then determine an appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). See also Gall v. United States, 552 U.S. 38 (2007); and Kimbrough v. United States, 552 U.S. 85 (2007).

The Supreme Court has emphasized that sentencing courts must make an individualized assessment based on the facts presented and may consider the defendant's history, characteristics, rehabilitation, and other mitigating circumstances in deciding whether a guideline sentence would be greater than necessary. Pepper v. United States, 562 U.S. 476 (2011), Within that framework, the Court may consider both guideline-based mitigation and non-guideline mitigation in fashioning a just sentence.

3

**III. Guideline Issues Supporting a Reduced Sentence**

### A. Ms. Freeman's role was materially less culpable than that of the identifiable codefendant

The offense narrative in the PSR repeatedly describes Ms. Freeman as obtaining methamphetamine from Jimmy Harris before completing sales to the confidential source. On July 3, July 17, and July 24, 2024, the confidential source drove Ms. Freeman to Harris so she could retrieve narcotics from him. On August 7, 2024, the PSR again states that Ms. Freeman met with Harris before selling methamphetamine to the source. By contrast, Harris is described as the upstream source and is held accountable for greater overall drug quantities and additional controlled substances.

Those facts support a mitigating-role reduction under **U.S.S.G. § 3B1.2**. The record does not show that Ms. Freeman planned the conspiracy, exercised decision-making authority, financed transactions, recruited participants, or directed anyone else. The PSR instead depicts her as functioning in a subordinate capacity, without any demonstrated proprietary interest in the broader activity. At a minimum, the Court should find that she was a minor participant; the defense preserves the argument that the record supports an even greater reduction.

4

If the Court applies a mitigating-role adjustment, the corresponding reduction under **U.S.S.G. § 2D1.1(a)(5)** should also follow.

Under U.S.S.G. § 3B1.2, as described in the Guidelines commentary, a defendant may receive a mitigating-role adjustment if she played a limited function and was substantially less culpable than the average participant in the criminal activity, U.S.S.C. Guidelines Manual § 3B1.2 cmt. (2026). The Eleventh Circuit applies that standard through a two-part, fact-intensive framework: the court compares the defendant first to the relevant conduct for which he was held accountable and then, where possible, to other identifiable participants in that same relevant conduct, proposition supported by United States v. Cruickshank, 837 F.3d 1182 (11th Cir. 2016); United States v. Telles-Milton, No. 08-14777 (11th Cir. Oct. 1, 2009); United States v. Valdez, No. 19-14778 (11th Cir. July 28, 2020).

Applied to a defendant who acquires narcotics from a codefendant and then sells them to a confidential source, the key issue is whether her role in those sales was truly limited. If the evidence shows she lacked a proprietary interest, exercised little or no decision-making authority, had limited understanding of the larger operation, was simply paid to perform a task, and was materially less culpable than the other identifiable participants in that same conduct, proposition supported by United States v. Valdez, No. 19-

14778 (11th Cir. July 28, 2020); United States v. Cruickshank, 837 F.3d 1182 (11th Cir. 2016).

An adjustment is available for a defendant whose participation makes her substantially less culpable than the average participant, and it expressly recognizes that a defendant held accountable only for her own conduct can still qualify if she performed only a limited function, proposition supported by U.S.S.C. Guidelines Manual § 3B1.2 cmt. (2026). The commentary also identifies examples that matter in drug cases: a person who merely transports or stores drugs may qualify; a person without a proprietary interest who is simply paid to carry out assigned tasks should be considered for the adjustment; and the fact that the defendant's role was necessary does not by itself defeat relief, proposition supported by U.S.S.C. Guidelines Manual § 3B1.2 cmt. (2026).

Within the Eleventh Circuit, the governing framework comes from the en banc decision in United States v. Rodriguez De Varon, 175 F.3d 930 (11th Cir. 1999). Under that framework, the first and usually most important inquiry is the defendant's role in the relevant conduct attributed to her at sentencing, proposition supported by United States v. Telles-Milton, No. 08-14777 (11th Cir. Oct. 1, 2009); United States v. Rodriguez De Varon, 175 F.3d 930 (11th Cir. 1999).

The Eleventh Circuit repeatedly emphasizes that the analysis is based on the totality of the circumstances and is heavily fact dependent, proposition supported by United States v. Presendieu, 880 F.3d 1228 (11th Cir. 2018); United States v. Carreno Fernandez, No. 23-12337 (11th Cir. Feb. 3, 2026). Relevant considerations include the defendant's understanding of the scope and structure of the criminal activity, planning involvement, decision-making authority, nature and extent of participation, and expected benefit, proposition supported by United States v. Presendieu, 880 F.3d 1228 (11th Cir. 2018); United States v. Munoz, No. 19-11375 (11th Cir. Mar. 4, 2020); United States v. Barajas, No. 18-10916 (11th Cir. Oct. 26, 2018). Drug quantity may be a material factor and in extreme cases may strongly suggest responsibility, but quantity cannot be the only factor and does not categorically bar relief, proposition supported by United States v. Cruickshank, 837 F.3d 1182 (11th Cir. 2016); United States v. Sumoza-Padron, No. 22-14115 (11th Cir. Apr. 8, 2026).

The defendant is not categorically ineligible merely because she was sentenced only on the drugs he personally sold. That is the significance of United States v. Valdez, No. 19-14778 (11th Cir. July 28, 2020), which held it is legal error to deny a § 3B1.2 reduction solely because the defendant was accountable only for her own conduct. The guideline commentary says the

7

same thing: a defendant limited to her own conduct may still qualify if her function was limited, proposition supported by United States v. Valdez, No. 19-14778 (11th Cir. July 28, 2020); U.S.S.C. Guidelines Manual § 3B1.2 cmt. (2026).

In this case the codefendant Harris, supplied the drugs, dictated the terms, controlled the logistics, kept most of the profits, and used the defendant as a low-level runner or hand-to-hand seller for a small payment; the defendant had no ownership stake in the drugs; she lacked meaningful discretion and her participation was episodic and narrow.

Under § 3B1.2 and Eleventh Circuit precedent, a defendant who gets narcotics from a codefendant and resells them to a confidential source is eligible for a minor- or minimal-role reduction when she proves she was substantially less culpable than the average participant in the relevant conduct attributed to her at sentencing, The fact that she personally executed the sale does not automatically bar relief. In short, Ms. Freeman was a tightly controlled intermediary: no ownership stake, little discretion, limited knowledge, narrow participation, small, fixed compensation, and clear dominance by the supplying codefendant in planning, control, and profits.

8

**B. The PSR overstates entrepreneurial or supplier-level culpability**

Paragraph 21 of the PSR states that Ms. Freeman purchased narcotics from Harris "and/or another supplier" and resold them "at a higher price for profit." That phrasing is materially aggravating, but the transaction-specific narrative cited elsewhere in the PSR does not establish an independent supplier relationship, a proprietary stake, or a profit-driven managerial role. Instead, the concrete narrative consistently identifies Harris as the source from whom Ms. Freeman obtained narcotics before the charged transactions.

The Court should therefore give little or no weight to generalized wording that overstates Ms. Freeman's independence or sophistication and should sentence based on the specific facts established in the record.

**C. Ms. Freeman should receive credit for acceptance of responsibility**

Ms. Freeman pleaded guilty to Counts One through Five and stipulated to facts sufficient to establish the essential elements of those offenses. That plea, entered without a written plea agreement, is substantial evidence of acceptance of responsibility under **U.S.S.G. § 3E1.1**.

The defense acknowledges the pretrial violations cited in the PSR, including positive drug tests and difficulties in treatment. But those events are more fairly understood as addiction-driven relapses and instability, not

as denial of guilt, obstruction, or a return to organized trafficking conduct. Substance-use relapses, while serious, does not automatically negate acceptance of responsibility where the defendant has admitted the conduct, entered a guilty plea, and spared the government the burden of trial.

In United States v. Mathews, 874 F.3d 698 (11th Cir. 2017), the court held that post-arrest drug use may justify denial of the adjustment, but a positive drug test is not a per se legal bar. The error in that case was that the district court appeared to think it lacked authority to grant the reduction once the defendant failed a drug test. The Eleventh Circuit rejected that understanding and made clear that the sentencing judge must exercise discretion rather than apply an automatic disqualification, United States v. Mathews, 874 F.3d 698 (11th Cir. 2017).

In United States v. Delgado, No. 23-11852 (11th Cir. Oct. 27, 2023), the defendant pleaded guilty but tested positive for cocaine six times while on bond and did not attend mandatory treatment. The Eleventh Circuit held that the district court did not clearly err in denying the reduction, because the defendant's conduct showed that he had not withdrawn from criminal behavior, United States v. Delgado, No. 23-11852 (11th Cir. Oct. 27, 2023).

1

Similarly in <u>United States v. Smith</u>, No. 23-10172 (11th Cir. Jan. 31, 2024). The court reaffirmed both sides of the doctrine when it ruled that a guilty plea does not create entitlement and that repeated failed drug tests may outweigh plea-based evidence of acceptance. However, the district court retains authority to grant the reduction despite failed tests if it chooses to do so based on the full record, <u>United States v. Smith</u>, No. 23-10172 (11th Cir. Jan. 31, 2024).

U.S.S.G. § 3E1.1(a) provides for a two-level reduction where a defendant clearly demonstrates acceptance of responsibility for her offense. A guilty plea, truthful admission of the offense conduct, and timely notification of an intent to plead guilty are significant evidence of acceptance, although not automatically controlling. The guideline commentary directs courts to consider, among other things, whether the defendant has truthfully admitted the conduct, voluntarily terminated or withdrawn from criminal conduct or associations, and undertaken post-offense rehabilitative efforts.

As previously suggested, the Eleventh Circuit has recognized that post-arrest or pretrial misconduct, including drug use while on release, may support denial of the adjustment, but the inquiry remains a fact-specific sentencing determination committed to the Court's judgment. In <u>United</u>

1

States v. Gonsalves, 121 F.3d 1416 (11th Cir. 1997), the Eleventh Circuit noted that a district court may consider positive drug tests and association with unlawful activity in deciding whether a defendant has accepted responsibility. At the same time, the guideline does not impose a per se bar whenever relapses occur; the question is whether the defendant's overall conduct shows a sincere acceptance of responsibility.

A defendant's cooperation may be recognized in two distinct ways. First, where the Government files a motion under U.S.S.G. § 5K1.1, the Court may depart based on substantial assistance. Second, even absent such a motion, the Court may consider a defendant's willingness to cooperate, guilty plea, candor, and assistance to the administration of justice as part of the broader sentencing analysis under 18 U.S.C. § 3553(a).

Ms. Freeman's guilty plea and factual admissions strongly support Acceptance of Responsibility. Ms. Freeman did not force the Government to try this case. She pleaded guilty to five serious drug counts and stipulated to the factual basis establishing the offenses. That plea is powerful evidence of acceptance under U.S.S.G. § 3E1.1. It conserved prosecutorial resources, avoided trial preparation, and spared witnesses and agents from further litigation.

1

Unlike a defendant who denies guilt, minimizes conduct, or obstructs the proceedings, Ms. Freeman ultimately admitted her role in the conspiracy and substantive drug transactions. The Presentence Report itself acknowledges that she pleaded guilty and stipulated to the essential facts. That conduct is the core showing contemplated by § 3E1.1.

The defense does not minimize the violations. Methamphetamine use while on release is serious and properly concerns the Court. But the record also shows that the violations were addiction-driven and were handled initially by Pretrial Services as treatment issues rather than as evidence that Ms. Freeman had rejected responsibility altogether.

The first violation report recommended no action and continuation on bond. Even after later violations, Pretrial Services documented that Ms. Freeman maintained employment, remained at her approved residence, stayed in contact with supervision, submitted negative urinalysis tests on some occasions, and accumulated no new arrests or law-enforcement contacts. Those facts matter. They show instability and relapse, not flight, deception about the underlying offense, obstruction, or new trafficking activity while on release.

1

The PSR's rationale relies on Application Note 1(B), which considers whether a defendant voluntarily terminated criminal conduct or associations. But relapses during supervision do not require the Court to disregard all countervailing indicators of acceptance. Addiction is often nonlinear. In this case, the relapse occurred in the same sphere of substance dependency that existed before arrest and that Pretrial Services attempted to address through psychiatric care, outpatient counseling, Narcotics Anonymous, and then inpatient treatment.

In short, Ms. Freeman's conduct while on bond was troubling, but it is better understood as evidence of a severe substance-use disorder than as proof that her guilty plea and factual admissions were insincere. Sentencing under § 3E1.1 remains an individualized determination. Here, unlike in many cases involving post-plea misconduct, Ms. Freeman still entered a guilty plea, admitted the offense conduct, avoided trial, and displayed continued ties to supervision rather than absconding or committing new violent or deceptive conduct. The Court may therefore distinguish the facts here and conclude that, notwithstanding relapse, her overall conduct still reflects acceptance.

1

**D. Safety-valve relief should be considered if the Court finds the statutory requirements satisfied**

The defense has also preserved an objection seeking application of safety-valve relief under **18 U.S.C. § 3553(f)** and **U.S.S.G. § 5C1.2**. If the Court determines that Ms. Freeman satisfies the statutory criteria, the otherwise applicable mandatory minimum need not control, and the Court may impose a sentence below that floor consistent with the guidelines and the factors in § 3553(a). Ms. Freeman truthfully debriefed on April 8, 2026, and otherwise qualifies for the application of safety valve.

**IV. The Section 3553(a) Factors Strongly Support Leniency**

**A. History and characteristics of the defendant**

Ms. Freeman is not defined by the conduct in this case. The character letters submitted on her behalf present a consistent account of a person who has long been viewed as kind, compassionate, dependable, hardworking, and supportive of others. A former coworker described her as professional, responsible, warm, and reliable. Her brother described a lifelong pattern of compassion, loyalty, and stepping up for others. Another coworker described her as kind, helpful, thoughtful, dependable, and worthy of mercy. Her fiancé's mother likewise described her as kind, hardworking, dedicated to family, remorseful, and willing to learn from this experience.

The letters also establish a substantial work history. Ms. Freeman's sister explains that she began working in apartment management roughly eighteen years ago, advanced from office manager to regional management, passed multiple exams, and maintained a perfect attendance record. That history reflects discipline, employability, and a demonstrated ability to live a lawful and productive life over a sustained period.

**B. Serious medical and personal hardship preceded the offense conduct**

The Court should also consider the major destabilizing events that preceded this case. According to her sister's letter, Ms. Freeman suffered significant health problems after contracting COVID-19, including long-COVID symptoms that impaired concentration and contributed to job loss. She was later diagnosed with **Giant Cell Arteritis**, experienced a period of blindness, underwent two emergency surgeries to restore her eyesight, and may also have suffered a mild stroke. Those events were followed by professional and financial disruption and left her vulnerable at a low point in her life.

These circumstances do not excuse the offense, but they provide important context. They help explain how a previously hardworking and stable person became vulnerable to addiction, poor judgment, and association with the wrong people.

1

**C. The offense conduct appears closely tied to addiction rather than greed or sophisticated trafficking**

The record does not establish that Ms. Freeman acted as an independent drug entrepreneur. The more persuasive reading of the record is that her conduct was addiction-driven and that she functioned in a lower-level capacity in relation to Harris. That distinction matters under § 3553(a), because the need for punishment and deterrence is different when the defendant is acting from dependency and instability rather than from entrenched, managerial profiteering.

**D. Family support and collateral consequences are substantial**

Ms. Freeman has been the sole long-term provider for her daughter, **Emma**, whom she raised without assistance from the child's father and without state support. Her incarceration has caused significant hardship to Emma, who is a college student and lacks stable housing during academic breaks. The letters also show that Ms. Freeman moved to Florida to help care for elderly parents in poor health and that multiple family members remain willing to support her rehabilitation.

This support network reduces the risk of recidivism and increases the likelihood that Ms. Freeman can successfully reenter the community, obtain lawful employment, continue treatment, and resume family responsibilities.

1

**E. A lengthy sentence is not necessary to protect the public or promote respect for the law**

Ms. Freeman's guilty plea, the consequences she has already experienced, her detention following bond revocation, and the pending felony judgment have already imposed serious punishment. The record suggests a defendant in need of treatment, structure, and rehabilitation more than extended incapacitation. A lower sentence would still reflect the seriousness of the offense, promote respect for the law, and provide just punishment while avoiding a sentence greater than necessary.

**F. Rehabilitation is realistic and supported by the record**

The Court may consider evidence of rehabilitation and the defendant's capacity for reform in selecting an appropriate sentence. Here, the letters uniformly describe a person with a history of responsibility, care for others, and positive contribution. This is not a record showing an absence of redeeming qualities. It is a record showing a woman who experienced serious medical decline, addiction, and instability, but who still retains strong family ties, community support, and the ability to rebuild.

**V. Requested Sentence**

For all these reasons, Ms. Freeman respectfully asks the Court to impose a sentence of **37 months in the Bureau of Prisons**. Specifically,

1

the defense requests that the Court: Sustain the defense objections to aggravating factual characterizations in the PSR that overstate Ms. Freeman's culpability. Apply an appropriate mitigating-role reduction under **U.S.S.G. § 3B1.2**, together with any corresponding reduction under **U.S.S.G. § 2D1.1(a)(5)**. Award acceptance-of-responsibility credit under **U.S.S.G. § 3E1.1**. Apply safety-valve relief under **18 U.S.C. § 3553(f)** and **U.S.S.G. § 5C1.2**, if the Court finds the statutory criteria satisfied. Impose a sentence at the statutory minimum, or such lower sentence as is lawfully available if safety-valve relief is granted, followed by an appropriate period of supervised release with substance-abuse and medical treatment conditions.

In the alternative, even if the Court declines some or all the guideline objections, Ms. Freeman respectfully requests a downward variance under 18 U.S.C. § 3553(a) based on her limited role, addiction-related relapse, medical history, family responsibilities, work history, and extraordinary support from family and community members.

## VI. Conclusion

Ms. Freeman has pleaded guilty and stands before the Court having already suffered the collapse of her health, employment, freedom, and stability. The record supports the conclusion that she is less culpable than

1

the principal supplier identified in the PSR, that her conduct was closely bound up with addiction and personal decline, and that she possesses significant rehabilitative potential.

WHEREFORE the defendant requests a sentence below the advisory range which would be sufficient, but not greater than necessary, to achieve the goals of federal sentencing. Ms. Freeman therefore respectfully requests that the Court impose the most lenient sentence authorized by law.

Respectfully submitted,

By:  /s/ Serbo C. Simeoni, Esq.
Serbo C. Simeoni, Esq.

**CERTIFICATE OF SERVICE**

**THE UNDERSIGNED HEREBY CERTIFIES** that the original of the foregoing has been furnished by Electronic Filing to Sheryl Loesch, Clerk of Court, U.S. District Court, Middle District of Florida and that e-mail notification of this filing will be sent to all interested persons on this April 12, 2026.

s/Serbo C. Simeoni
Serbo C. Simeoni, Esq.
1700 N. McMullen Booth Rd.
Suiter A-7
Clearwater, FL 33759
Telephone: (727) 799-3506
Facsimile:   (727)202-5014
Email:      simeoni07@gmail.com
Florida Bar # 0921970
CJA Counsel for Defendant.

2